UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ATLANTIC RESEARCH MARKETING SYSTEMS, INC., a/k/a A.R.M.S., and RICHARD E. SWAN,<br>Plaintiffs | C.A. No. 00 CV 10672 REK |
| v. | **COMPLAINT** |
| G.G.& G., L.L.C., a/k/a GUNS, GEAR & GADGETS, L.L.C. or G', L.L.C., THOMAS PATTERSON, and THOMAS NEWHALL,<br>Defendants | |

1. Plaintiff, Atlantic Research Marketing Systems, Inc., a/k/a/ A.R.M.S., Inc., is a Massachusetts corporation having its principal place of business at 230 West Center Street, West Bridgewater, MA 02379, and is engaged in the trade or commerce of designing, manufacturing and selling mounts for firearms.

2. Plaintiff, Richard E. Swan, is an individual residing at 171 West Street, East Bridgewater, Massachusetts (Plaintiffs are hereinafter collectively referred to as "A.R.M.S.") and is the President of A.R.M.S. and the owner of proprietary designs, trademarks and patents used by A.R.M.S.

RECEIPT # 21532
AMOUNT $ 150.00
SUMMONS ISS. YES
LOCAL RULE 4.1 YES
WAIVER OF SERV.
MCF ISSUED
AO 120 OR 121 NO
BY DPTY CLK KS
DATE 4-6-00

3. Defendant, G.G.& G., L.L.C. a/k/a Guns, Gear & Gadgets, L.L.C. or $G^3$, L.L.C. (hereinafter "G.G.& G.") is an Arizona limited liability company having its principal offices at 3602 East 42nd Stravenue, Tucson, AZ 85713, and is engaged in the trade or commerce of manufacturing, fabricating, assembling and selling mounts for firearms.

4. Defendant, Thomas Patterson, (hereinafter "PATTERSON") is an individual with a usual place of residence at 1170 North Corinthian Place, Tucson, Arizona 85715, and at all times material was a member and a controlling stockholder or owner of G.G.& G..

5. Defendant, Thomas Newhall, (hereinafter "NEWHALL") is an individual with a usual place of residence at 10637 North Thunderhill Place, Tucson, Arizona 85737, and at all times material was a member and a controlling stockholder or owner of G.G.& G.

6. The matter in controversy exceeds the sum of $50,000.00, exclusive of interest and costs.

7. The jurisdiction of this Honorable Court is founded upon diversity of citizenship, an amount in controversy in excess of $50,000.00, pursuant to 28 U.S.C. §1332, and by order of this court in a judgment issued on December 17, 1997 in the matter of A.R.M.S. et al. v. G.G.& G., L.L.C., et al., Civil Action No. 96-11425WGY, a copy of which judgment is attached hereto as

misrepresented the ultimate end purchaser of certain A.R.M.S. #2 scope mounts and #5 multibases purchased from A.R.M.S.; (10) infringed three specific A.R.M.S. U.S. Patents; (11) infringed two specific A.R.M.S. federally registered trademarks; (12) infringed one A.R.M.S. common law trademark; (13) falsely designated the origin of certain G.G.& G. products; and (14) committed unfair and deceptive acts or practices in violation of Massachusetts Law.

11. In October, 1997, the parties settled the action. The terms of settlement were set forth in a Settlement Agreement with an effective date of October 6, 1997, a copy of which is attached hereto as Exhibit 2 and incorporated herein by reference (hereinafter "Settlement Agreement").

12. On a Stipulation and Motion For Entry of Judgment by the parties (Exhibit 3 hereto and incorporated herein by reference) and as part of the Settlement Agreement, the court entered a Judgment for Plaintiffs providing injunctive relief, specifying damages on all counts, and dismissing Defendants' counterclaims. (Exhibit 1 hereto).

13. The Judgment, as well as the Settlement Agreement, banned G.G.& G., Patterson, and Newhall, inter alia, from making, using, selling, dealing or offering for sale certain named products, including any M-14 mount. See, Judgment, Par. 4(b)(iii); and Settlement Agreement, Par. B(2)(d)(iii). An

illustration of an M-14 mount is attached hereto as Exhibit 4 and incorporated herein by reference. An M-14 mount permits the addition of a telescope, laser or Infrared aimer, and similar ancillary equipment, to an M-14 military rifle and its civilian counterpart, the M1A1.

14. On or about September 17, 1999, John H. Miller, of Marietta, Ohio, an expert in small arms weapons and author of the book, "The M14 Owner's Guide", purchased two M-14 mounts from Flag Guns, La Habra, California.

15. Each of the M-14 mounts had "GGG TUC AZ U.S.M.C." stamped on them.

16. Flag Guns indicated to Mr. Miller that the two M-14 mounts were obtained from G.G.& G., Tucson, Arizona.

17. Subsequent to this purchase, Mr. Miller attended "The Soldier Of Fortune" Show, in Las Vegas, Nevada, during the period September 25-26, 1999, (hereinafter the "Show").

18. The Show is a large military oriented trade show held on a yearly basis.

19. While walking through the Show Mr. Miller saw and observed Thomas Newhall and Thomas Patterson, both of G.G.& G., selling M-14 mounts as "production overruns".

20. The M-14 mounts which Mr. Miller observed Thomas Newhall and Thomas Patterson selling were substantially similar to the M-14 mount illustrated in Exhibit 4.

21. The allegations in Paragraphs 14 through 20 are supported by an Affidavit by Mr. Miller attached hereto as Exhibit 5.

22. On or about September 25, 1999, Rocky A. Green, Lake Forest, California, also attended the Show in Las Vegas, Nevada.

23. Mr. Green is a manufacturer's representative specializing in equipment for law enforcement agencies. Mr. Green has been in the firearms business since 1982. Mr. Green previously owned a distributorship specializing in high quality and professional end user telescopic sights and mounting systems.

24. While walking through the Show in the company of a Mr. Ludovice La Fortrie, Mr. Green observed and then visited a booth, specifically visiting a Mr. Hans Vang who was in attendance at the booth. At this booth Thomas Patterson and Thomas Newhall, of G.G.& G. were also in attendance.

25. During Mr. Green's visit at the booth and while speaking with Mr. Vang and Mr. Newhall, Mr. Green observed an M-14 mount sitting out on a table at the booth. During the conversation among the three men, Mr. Newhall stated that the particular M-14 mount on the table was from an overrun from a batch of M-14 mounts

which G.G.& G. was making and selling under contract to the U.S. Marine Corps.

26. The M-14 mounts which Mr. Green observed were substantially similar to the M-14 mount illustrated in Exhibit 4.

27. The allegations in Paragraphs 22 through 26 are supported by an Affidavit by Mr. Green attached hereto as Exhibit 6 and incorporated herein by reference.

28. On or about December 23, 1999, Mr. Thomas Patterson was deposed by an A.R.M.S. attorney in the matter of Thomas Patterson v. A.R.M.S., et al., CV 98369 (U.S. District Court - Arizona). During this deposition Mr. Patterson stated, under oath, that G.G.& G. sold as many as 253 M-14 mounts to the U.S. Marine Corps. after the Settlement Agreement attached hereto as Exhibit 2. The pertinent excerpt from this deposition is attached hereto as Exhibit 7 and incorporated herein by reference.

**Count I**
**(Breach of Settlement Agreement - G.G.& G.)**

29. A.R.M.S. restates and incorporates herein by reference paragraphs 1 through 28 of this Complaint.

30. By making, selling and/or distributing M-14 mounts G.G.& G. breached the provisions of the Settlement Agreement.

31. A.R.M.S. has been damaged.

**Count II**
**(Breach of Settlement Agreement - Thomas Patterson)**

32. A.R.M.S. restates and incorporates herein by reference paragraphs 1 through 31 of this Complaint.

33. By making, selling and/or distributing M-14 mounts Thomas Patterson breached the provisions of the Settlement Agreement.

34. A.R.M.S. has been damaged.

**Count III**
**(Breach of Settlement Agreement - Thomas Newhall)**

35. A.R.M.S. restates and incorporates herein by reference paragraphs 1 through 34 of this Complaint.

36. By making, selling and/or distributing M-14 mounts Thomas Newhall breached the provisions of the Settlement Agreement.

37. A.R.M.S. has been damaged.

**Count IV**
**(Contempt - G.G.& G.)**

38. A.R.M.S. restates and incorporates herein by reference paragraphs 1 through 37 of this Complaint.

39. By making, selling and/or distributing M-14 mounts G.G.& G. breached the provisions of the Injunctions contained in the Judgment and Settlement Agreement.

40. A.R.M.S. has been damaged.

**Count V**
**(Contempt - Thomas Patterson)**

41. A.R.M.S. restates and incorporates herein by reference paragraphs 1 through 40 of this Complaint.

42. By making, selling and/or distributing M-14 mounts Thomas Patterson breached the provisions of the Injunctions contained in the Judgment and Settlement Agreement.

43. A.R.M.S. has been damaged.

**Count VI**
**(Contempt - Thomas Newhall)**

44. A.R.M.S. restates and incorporates herein by reference paragraphs 1 through 43 of this Complaint.

45. By making, selling and/or distributing M-14 mounts Thomas Newhall breached the provisions of the Injunctions contained in the Judgment and Settlement Agreement.

46. A.R.M.S. has been damaged.

WHEREFORE, A.R.M.S. respectfully requests:

a. That the Court adjudge and decree that the defendants, individually and severally have breached the Settlement Agreement;

b. That the Court adjudge and decree that the defendants, individually and severally has breached the injunctive provisions of the Judgment;

c. That the Court order the defendants to pay the greater of actual damages sustained or the liquidated damages as stated in the Settlement Agreement;

d. That the Court order the defendants to identify all sales of any kind made since entry of the Settlement Agreement and Judgment, such identification to include the identity of actual products sold, including an actual sample, the dollar amounts for each product sold and identification of the person or entity to whom such product was sold;

e. That the Court order the defendants' premises be opened for examination by a Court authorized person, organization or entity to determine compliance with the injunctive provisions of the Judgment;

f. That the Court compel defendants to pay A.R.M.S.' attorney fees, together with all costs of this suit; and

g. That the Court order such other and further relief as may be just, equitable and proper.

One of Plaintiffs' Attorneys

John P. McGonagle, BBO #333760
800 Hingham Street - 2N
Rockland, MA 02370
781-871-4000

Douglas A. Hale, BBO #217100
Wynn & Wynn, P.C.
90 New State Highway
Raynham, MA 02767
508-823-4567

**EXHIBIT 1**

**(Judgment)**

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

ATLANTIC RESEARCH MARKETING SYSTEMS, INC., a/k/a A.R.M.S., and RICHARD E. SWAN,
Plaintiffs

v.

G.G.& G., L.L.C., a/k/a GUNS, GEAR & GADGETS, L.L.C. or G', L.L.C., THOMAS PATTERSON, THOMAS NEWHALL, MARK NEWHALL and GRACE TOOL, INC.,
Defendants

C.A. No. 96-11425WGY

JUDGMENT

By consent of the parties, Plaintiffs, A.R.M.S., and Richard E. Swan, and Defendants, G.G.& G., L.L.C., Thomas Patterson, and Thomas Newhall, and Mark Newhall,

IT IS ORDERED, DECREED AND ADJUDGED:

1. This Court has jurisdiction of the subject matter of this action and all parties hereto.

2. Venue is proper in this Court over the Plaintiffs, A.R.M.S., and Richard E. Swan, and Defendants, G.G.& G., L.L.C., Thomas Patterson, and Thomas Newhall.



DOCKETED

(93)

3. Judgment for Plaintiffs for damages in the amount of $500,000.00 on all counts in favor of Plaintiffs against Defendant, G.G.& G., L.L.C., and Judgment for Plaintiffs for damages in the amount of $75,000.00 against Defendants, Thomas Newhall and Thomas Patterson, jointly and severally, with all of the Defendants' counterclaims dismissed with prejudice. Levy and execution on the damages judgment are subject to the terms of a Settlement Agreement, dated October 24, 1997, and any Addenda thereto.

4. Permanent Injunctive Relief as delineated below is hereby entered:

a. Mark Newhall, voluntarily submits to the jurisdiction of the U.S. District Court of Massachusetts only for purposes of the following injunction portion of this Judgment, including the provisions for determination of proprietary "know-how" and related injunctive relief.

b. Defendants G.G.& G., L.L.C., Thomas Patterson and Thomas Newhall, and Mark Newhall, their agents, servants, employees, attorneys, successors, assigns and consignees, and all those acting under their authority or in privity with them are permanently enjoined from any and all of the following:

i. making, using, selling, dealing or offering for sale any product which infringes United States Letters Patent Nos. 5,142,806; 5,276,988; and 4,845,871;

ii. purchasing, making, using, selling, dealing or offering for sale any product which in any way uses or displays, directly or indirectly, the A.R.M.S. or Swan trademarks or trade names, including "A.R.M.S." and those covered by U.S. Trademark Registration Nos. 1,849,858 and 1,835,382;

iii. making, using, selling, dealing or offering for sale any of the following products: IRS, M-14 mount, and M-16 carry handle mounts now made by or for G.G.& G., L.L.C., the G-3 mount and the FN/FAL mount; notwithstanding this subsection of the Judgment, Defendant, G.G.& G., L.L.C., may make and sell no more than 100 IRS by no later than 12/31/97; contemporaneously with any sale, a copy of the invoice of sale will be sent to plaintiffs' attorney, John P. McGonagle, postage prepaid; it is understood by the parties, and disclosed by Defendants and Mark Newhall, that 1 G-3 mount, 3 FN/FAL mounts, 4 M-16 mounts and 14 M-14 mounts have been sold and shipped by Defendants since October 6, 1997; Defendants will pay Plaintiffs royalties for ten of those mounts in accordance with the Settlement Agreement and Addenda;

iv. Defendants, G.G.& G., L.L.C., Thomas Patterson, and Thomas Newhall, and Mark Newhall shall surrender to Plaintiff, A.R.M.S., any products, nameplates, labels, advertisements and other materials that bear or display Plaintiffs' U.S. Patent Nos. 5,142,806; 5,276,988; and 4,845,871 or designation of origin for U.S. Trademark Registration Nos. 1,849,858 and 1,835,382 or the A.R.M.S. or Swan name or logos, and will not hereafter manufacture, advertise or distribute any products bearing or displaying the '806, '988 or '871 Patents, the above trademarks, or the A.R.M.S. or Swan names or logos. Nothing in this subsection of the Judgment is intended to preclude Defendants and Mark Newhall from possessing, using or consulting trade publications and the like in which A.R.M.S. products are incidentally advertised or displayed.

v. The parties shall negotiate to delineate and define the proprietary "know-how" belonging to Plaintiffs and communicated to Defendants (including Mark Newhall) and the restrictions or prohibitions on the Defendants' use of such know-how. To the extent that agreement on some or all of "know-how" cannot be reached, the Court will conduct a hearing to determine the "know-how" entitled to protection and the extent and means of the protection of the same, including a declaration of rights and the entry of injunctive relief against Defendants and Mark Newhall. Each party shall bear its own attorneys fees, costs and expenses in said proceeding.

vi. In any proceeding for violation of the injunctive relief set forth herein or in the Judgment or any injunctive relief determined and entered by the Court as a result of the "know how" hearing, nothing in this injunction shall be construed as a waiver by Defendants and Mark Newhall of their defense against such action on the grounds that they have not in fact violated the injunction either because they did not in fact make or deal in the violating products or that such products as they did make or deal in did not in fact violate the Plaintiffs' rights or to the extent that actual damages in excess of the liquidated damages amount are claimed that such damages did not occur or were not causally related.

c. Should any of the Defendants, or Mark Newhall, intentionally and substantially violate any of the provisions of the above injunction, including violations of any restrictions or prohibitions on the proprietary "know-how" belonging to Plaintiffs, said Defendants and Mark Newhall shall be subject to liquidated damages in the amount of the greater of $75,000 or actual damages proven.

5. Defendants are entitled to retain examples of any item identified in the pleadings for legal defense and related purposes provided that an inventory of such items is provided to Plaintiffs and that such items are maintained in the custody and control of Defendants' present counsel of record in this case, and for personal

and private use as permitted by the Settlement Agreement and Addenda.

6. Jurisdiction in this Court is retained to enter such further Orders as may be necessary for the carrying out of this Judgment, the enforcements of compliance with its terms, or the punishment of violations of said terms. Any such further orders, enforcement or punishment shall be in addition to any and all other remedies available to the parties arising under this Judgment, Settlement Agreement and Addenda.

SO ORDERED:

William G. Young

William G. Young, United States
District Judge

Dec 17, 1997

**EXHIBIT 2**

**(Settlement Agreement)**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ATLANTIC RESEARCH MARKETING SYSTEMS, INC., a/k/a A.R.M.S., and RICHARD E. SWAN, Plaintiffs<br><br>v.<br><br>G.G.& G., L.L.C., a/k/a GUNS, GEAR & GADGETS, L.L.C. or G', L.L.C., THOMAS PATTERSON, THOMAS NEWHALL, MARK NEWHALL and GRACE TOOL, INC., Defendants | C.A. No. 96-11425WGY |

## SETTLEMENT AGREEMENT

This document outlines the settlement terms agreed to by the parties in the above captioned matter. This document will be supersede by formal settlement documents. The settlement consists of two parts: (A) provisions for Judgment for monetary damages and satisfaction thereof, and (B) provisions for injunctive relief.

A. JUDGMENT FOR MONETARY DAMAGES AND SATISFACTION THEREOF.

1. Judgment for Plaintiffs for damages in the amount of $500,000.00 will be entered on all counts in favor of Plaintiffs against G.G.& G., L.L.C., and for $75,000.00 against Thomas Newhall and Thomas Patterson, jointly and severally, with all of the Defendants' counterclaims dismissed with prejudice. Levy and execution on the damages judgment are subject to the terms of the settlement agreement.

2. The Plaintiffs irrevocably waive all but payment of $75,000.00 of said judgment. The parties agree that the above judgment for damages will be satisfied in full by the payments set forth in this section, which Defendants G.G.& G., L.L.C., Thomas Newhall and Thomas Patterson agree to pay. Notwithstanding the entry of the judgment for damages, no execution or levy to enforce or collect the above judgment for damages shall issue other than

for the amounts and according to the terms set forth in this section.

a. The Defendants shall pay Plaintiffs $6,000.00, no later than November 1, 1997.

b. The Defendants shall make a good faith effort to pay an additional $44,000.00 by December 31, 1997.

c. If Defendants are not reasonably able to pay the $44,000 by December 31, 1997, then Defendants will pay the $44,000 on 1/31/98.

d. If Defendants are not reasonably able to pay the $44,000 on 1/31/98, then Defendants will pay $6,000 on 2/1/98, and $39,000 on 2/28/98 ($38,000 principal balance plus $1,000 in interest).

e. If Defendants are not reasonably able to pay the $39,000 on 2/28/98, then Defendants will pay $6,000 on 3/1/98, and $34,000 on 3/31/98 ($32,000 principal balance plus $2,000 in interest).

f. If Defendants are not reasonably able to pay the $34,000 on 3/31/98, then Defendants will pay $6,000 on 4/1/98, and $29,000 on 4/30/98 ($26,000 principal balance plus $3,000 in interest).

g. If Defendants are not reasonably able to pay the $29,000 on 4/30/98, then Defendants will pay $6,000 on 5/1/98, and $24,000 on 5/31/98 ($20,000 principal balance plus $4,000 in interest).

h. If Defendants are not reasonably able to pay the $24,000 on 5/31/98, then Defendants will pay $6,000 on 6/1/98, and $19,000 o n 6/30/98 ($14,000 principal balance plus $5,000 in interest).

i. If Defendants are not reasonably able to pay the $19,000 on 6/30/98, then Defendants will pay $6,000 on 7/1/98, and $14,000 on 7/31/98 ($8,000 principal balance plus $6,000 in interest).

j. If Defendants are not reasonably able to pay the $14,000 on 7/31/98, then Defendants will pay $6,000 on 8/1/98, and $9,000 on 8/31/98 ($2,000 principal balance plus $7,000 in interest) together with any other amounts then remaining unpaid.

3. In the event any of the above payments (being either payment of the remaining principal and interest balance or the alternative payment provided) provided in the above sub-paragraphs (excepting only sub-paragraph c.) is not made within five (5) days of the payment date, the Plaintiffs shall be entitled to execute and levy upon the judgment for monetary damages in the amount of $75,000 less those payments already made hereunder. Payments will be deemed made only upon receipt by Plaintiffs.

4. The parties shall execute and Dustin Hecker, Esq. shall hold in escrow a satisfaction of Judgment in Part, acknowledging receipt of the monetary damages award. Upon full payment of the amounts set forth above or of any execution issued pursuant to the judgment and written notice to Plaintiffs and receipt by the escrow agent of the written assent of Plaintiffs, which assent shall not be unreasonably withheld, and in no other event, the Defendants may file the instrument acknowledging satisfaction of the damages portion of the judgment.

B. INJUNCTIVE RELIEF

1. Mark Newhall shall submit to the jurisdiction of the U.S. District Court of Massachusetts only for purposes of the injunction portion of this settlement agreement, including the provisions for determination of the proprietary "know-how" and related injunctive relief.

2. Without admitting any liability or infringement of any patent, trademark or proprietary rights, Mark Newhall and Defendants G.G.& G., Thomas Newhall and Thomas Patterson:

   a. Acknowledge and agree that any licenses, agreements, or rights of manufacture which G.G.& G. may now have or ever have had to manufacture and sell the A.R.M.S. G-3 and FN/FAL mounts are rescinded and terminated and all rights thereunder revert to A.R.M.S. and Swan;

   b. Agree to immediately surrender and return to A.R.M.S. without any defacement, partial or total destruction, modification, alteration or otherwise rendering unsalvageable or usable, (1) all plans, specifications, blueprints, drawings, models, samples, extrusions, special tooling, molds, dies, castings, gauges and testing mechanisms, manuals or

instructions and other information used in the manufacture, sale and distribution of the A.R.M.S. G-3 and FN/FAL mounts and any other A.R.M.S. products, (2) all other A.R.M.S. products, materials, components, and parts thereof, whether partially or completely assembled, manufactured, fabricated, or purchased from others, together with the records of purchase, sale or other disposition of any of the above concerning such products, and (3) all tools, molds, dies, gauges, testing mechanisms and information supplied to any of the Defendants by or on behalf of any Plaintiff or paid for by or on behalf of any Plaintiff.

c. agree to surrender and deliver to Plaintiffs without any defacement, partial or total destruction, modification, alteration or other wise rendering unsalvageable or usable, all A.R.M.S. products and any and all parts or components thereof, whether partially or completely assembled, manufactured, fabricated, or purchased from others, and all materials, castings, plans, diagrams, specifications, special tools, manuals, records of purchase, sale or other disposition of any of the above which have not yet been delivered to Plaintiffs and to provide a list of those that have been delivered previously (other than those documents delivered in discovery) and the date and circumstances of their delivery. The items to be returned shall not include Defendants' general purpose machinery (provided than any parts or components thereof modified or adapted specifically to make A.R.M.S. parts, components or products are removed and delivered to A.R.M.S. and provided further that such general purpose machines are in fact altered to eliminate any other such special modifications) or "off the shelf" generic parts purchased by Defendants and used in making products other than those the Defendants are enjoined or forbidden from making under this agreement or by court order, except that all such items supplied by or paid for by A.R.M.S. or Swan or specially modified to make any A.R.M.S. component, part or product are included in the items to be returned. Defendants and Mark Newhall may not directly or indirectly use any such remaining equipment, tooling or other items as a means of circumventing the restrictions imposed by this agreement. This provision shall not restrict Defendants and Mark Newhall from using or employing such remaining

equipment, tooling and other items in connection with products or services other than those restricted or forbidden by this agreement or order of the court after the so-called "Know How" trial.

d. Stipulate and agree to the entry of a permanent injunction restraining Defendants G.G.& G., L.L.C., Thomas Patterson, Thomas Newhall and Mark Newhall, their agents, servants, employees, attorneys, successors, assigns and consignees, and all those acting under their authority or in privity with them from any and all of the following:

i. making, using, selling, dealing or offering for sale any product which infringes United States Letters Patent Nos. 5,142,806; 5,276,988; and 4,845,871;

ii. purchasing, making, using, selling, dealing or offering for sale any product which in any way uses or displays, directly or indirectly, the A.R.M.S. or Swan trademarks or trade names, including "A.R.M.S." and those covered by U.S. Trademark Registration Nos. 1,849,858 and 1,835,382;

iii. making, using, selling, dealing or offering for sale any of the following products: IRS, M-14 mount, and M-16 carry handle mounts now made by or for G.G.& G., L.L.C., the G-3 mount and the FN/FAL mount;

iv. Defendants and Mark Newhall will also surrender to A.R.M.S. and will not use all products, nameplates, labels, advertisements and other materials regarding plaintiffs' patents or designation of origin for U.S. Trademark Registration Nos. 1,849,858 and 1,835,382, or otherwise bearing the A.R.M.S. or the Swan name or logos; and

v. The parties will negotiate in good faith to delineate and define the proprietary "know-how" belonging to Plaintiffs and communicated to Defendants (including Mark Newhall) and the restrictions or prohibitions on the Defendants' use of such know-how. To the extent that agreement on some or all of "know-how" cannot be reached, the court will conduct a hearing to determine the "know-how" entitled

to protection and the extent and means of the protection of the same, including a declaration of rights and the entry of injunctive relief against Defendants and Mark Newhall. The parties agree that each party shall bear its own attorneys fees, costs and expenses in said proceeding.

vi. The only exceptions to the provisions of this section B.2.a. and B.2.d. are: (1) G.G.& G., L.L.C. may make and sell no more than 100 IRS no later than 12/31/97, said mounts to be made within thirty (30) days provided this can be done by reasonable efforts without substantial interruption of Defendants' usual or anticipated production schedule or detrimental effect upon G.G.& G.'s business; contemporaneously with any sale, a copy of the invoice of sale will be sent to plaintiffs' attorney, John P. McGonagle, postage prepaid; (2) Defendants represent that they have bodies and parts for no more than 50 FN/FAL mounts and will turn over to Plaintiffs completed FN/FAL mounts conforming to the specifications and receive a credit of $50 per completed FN/FAL mount, to be completed and delivered to Plaintiffs' Attorney, John P. McGonagle, 800 Hingham Street - 2N, Rockland, MA 02370 within thirty days. This applies only up to 50 FN/FAL mounts and the credit would be against the amount of judgment finally due and payable, but not the first payment due.

vii. In any proceeding for violation of the injunctive relief set forth herein or in the Judgment or any injunctive relief determined and entered by the Court as a result of the "know how" hearing, nothing in this section B.2. shall be construed as a waiver by Defendants of their defense against such action on the grounds that they have not in fact violated the injunction either because they did not in fact make or deal in the violating products or that such products as they did make or deal in did not in fact violate the Plaintiffs' rights or to the extent that actual damages in excess of the liquidated damages amount are claimed that such damages did not occur or were not causally related.

3. Defendants G.G.& G., Thomas Newhall, Mark Newhall and Thomas Patterson agree to provide any and all non-privileged records, documents and information in their possession relating to and cooperate reasonably in the prosecution of A.R.M.S.' and Swan's claims against any and all third parties for actions and violations of said patents, trademarks and other ownership rights, including but not limited to, Saco Defense, Ultimate Weapons Systems, Tactical2, R Guns, Entreprise Arms, Howard Chow, Lee Grashiem, Evans Gunsmithing, DS Arms, S.A.W., and others.

4. G.G.& G. shall provide the names, addresses, countries, quantities and prices of all customers that have been sold allegedly infringing products (copies of actual invoices are best), or offered for sale A.R.M.S. products. The Defendants represent, warrant and agree that they have already provided said information completely in the form of documents and computer files specifically described as follows: ____________________ and the Defendants warrant, agree and represent that they will promptly produce all other such information of which they become aware in the future.

5. The provisions for injunctive relief shall include a liquidated damages clause providing for the award of judgment in the amount of the greater of $75,000 or actual damages proven, should any of the Defendants intentionally and substantially violate any of the provisions of the injunctive portion of this settlement agreement including violations of any restrictions or prohibitions on the proprietary "know-how" belonging to Plaintiffs, excepting only sub-paragraphs B.2.a., B.2.b., B.2.c., sub-paragraph B.2.d.v. (that portion only pertaining to the parties negotiating in good faith), sub-paragraph B.2.d.vi. (allowing a small number of IRS and FN/FAL mounts to be made in transition) and sub-paragraphs B.3. and B.4., for violation of any of which sub-paragraphs a remedy for actual damages shall be available to Plaintiffs.

C. Buffer Pad Tooling.

Notwithstanding Defendants' representation that certain buffer pad tooling (the ownership of which Plaintiffs claim) might have been "loaned" to Defendants by Saco Defense, Defendants forthwith will deliver the buffer pad tooling in escrow to John P. McGonagle, Esq. of Rockland, Massachusetts, or his designee (but not Richard E. Swan or any A.R.M.S. employee), who shall hold the

tooling in escrow as an escrow agent until the ownership thereof shall have been determined between Plaintiffs and Saco defense, by agreement or, in the absence of such agreement, by a court in an interpleader or other action to be brought by said escrow agent.

D. The parties agree and appoint Gerald Goddard & Associates, of Tucson, Arizona to inspect, identify, inventory, receive and remove any and all materials to be returned to Plaintiffs, including the supervision of the destruction of any materials, for which Plaintiffs in their sole discretion determine such destruction is appropriate.

E. The parties will execute mutual releases specific to the amended complaint, amended counterclaims and claims disclosed during this litigation and arising out of the facts and transactions giving rise to the litigation. All releases shall except and are subject to the obligations described herein or in the final judgment and settlement documents.

Dustin F. Hecker, Esq.
Posternak, Blankstein & Lund
100 Charles River Plaza
Boston, MA 02114-2723
(617) 973-6100
as atty for defendants only and not individually

John P. McGonagle, BBO #333760
800 Hingham Street - 2N
Rockland, MA 02370
(617) 227-7755

James A. Weisman, BBO #520960
Weisman & Toland, P.A.
44 Bromfield St., Penthouse
Boston, MA 02108
(617) 451-1214

Thomas Patterson, Individually
& for G.G.& G., L.L.C.

Richard E. Swan, Individually
& for A.R.M.S., Inc.

Thomas Newhall, Individually
& for G.G.& G., L.L.C.

Mark Newhall, Individually

tooling in escrow as an escrow agent until the ownership thereof shall have been determined between Plaintiffs and Saco defense, by agreement or, in the absence of such agreement, by a court in an interpleader or other action to be brought by said escrow agent.

D. The parties agree and appoint Gerald Goddard & Associates, of Tucson, Arizona to inspect, identify, inventory, receive and remove any and all materials to be returned to Plaintiffs, including the supervision of the destruction of any materials, for which Plaintiffs in their sole discretion determine such destruction is appropriate.

E. The parties will execute mutual releases specific to the amended complaint, amended counterclaims and claims disclosed during this litigation and arising out of the facts and transactions giving rise to the litigation. All releases shall except and are subject to the obligations described herein or in the final judgment and settlement documents.

Dustin F. Hecker, Esq.
Posternak, Blankstein & Lund
100 Charles River Plaza
Boston, MA 02114-2723
(617) 973-6100

John P. McGonagle, BBO #333760
800 Hingham Street - 2N
Rockland, MA 02370
(617) 227-7755

James A. Weisman, BBO #520960
Weisman & Toland, P.A.
44 Bromfield St., Penthouse
Boston, MA 02108
(617) 451-1214

Thomas Patterson, Individually & for G.G.& G., L.L.C.

Richard E. Swan, Individually & for A.R.M.S., Inc.

Thomas Newhall, Individually & for G.G.& G., L.L.C.

Mark Newhall, Individually

ADDENDUM TO SETTLEMENT AGREEMENT

1. In Section B.2.b. of the Agreement, it is understood that as to items currently held by a third party (i.e., G-3 molds), "surrender and return" means "instruct the third party to release." It is further understood that no product, material, component, or part purchased from another by Defendants or Mark Newhall and held for personal and private use is subject to surrender, return, or delivery under the Agreement. This in no way affects the provisions of B.2.d. of the Agreement.

2. It is understood by U.S. Corps the parties, and disclosed by Defendants and Mark Newhall, that 1 G-3 mount, 3 FN/FAL mounts, 4 M-16 mounts and 2 M-14 (non-Marine) mounts have been sold and shipped by Defendants since October 6, 1997. Defendants will pay Plaintiffs royalties for these ten mounts at a rate of $15 per FN/FAL mount and $10 per mount for the non-FN/FAL mounts.

3. Section B.2.d.iv is understood to mean the following: Defendants and Mark Newhall will also surrender to A.R.M.S. any products, nameplates, labels, advertisements and other materials that bear or display plaintiffs' U.S. Patent Nos. 5,142,806; 5,276,988; and 4,845,871 or designation of origin for U.S. Trademark Registration Nos. 1,849,858 and 1,835,382 or the A.R.M.S. or Swan name or logos, and will not hereafter manufacture, advertise or distribute any products bearing or displaying the '806, '988 or '871 Patents, the above trademarks, or the A.R.M.S. or Swan names or logos. Nothing in Section B.2.d.iv is intended to preclude Defendants and Mark Newhall from possessing, using or consulting trade publications and the like in which A.R.M.S. products are incidentally advertised or displayed, nor is this Subsection intended in any way to affect the rights of the Defendants and Mark Newhall under Subsection B.2 as clarified herein.

4. Notwithstanding Section B.2.d.vi. of the Agreement, it is understood that Defendants are entitled to retain examples of any item identified in the pleadings for legal defense and related purposes provided that an inventory of such items is provided to Plaintiffs and that such items are maintained in the custody and control of Defendants' present counsel of record in this case.

5. In Section B.3. of the Agreement, it is understood that the phrase "any and all third parties for actions and violations of said patents, trademarks, and other ownership rights" means "actions and violations of said patents, trademarks, and other ownership rights related to those third parties' or others' transactions with Defendants and Mark Newhall. . . ."

6. In Section D of the Agreement, it is understood that Gerald Goddard & Associates ("Goddard") is solely the agent of Plaintiffs and is not in the manner of an "arbiter," mutually authorized by the parties to make decisions that are mutually binding on them. Defendants agree that they will cooperate and not interfere with Gerald Goddard & Associates in the performance of Goddard's duties under this Agreement. Defendants and Mark Newhall will make their best efforts to turn over or make available to Goddard all materials to be returned to Plaintiffs by December 15, 1997.

7. This Addendum and the Agreement supersede any and all oral or written agreements and understandings previously made between the parties relating to the subject matter hereof. There are no understandings or agreements other than those incorporated or referred to herein. The Agreement and this Addendum may not be modified except by an instrument in writing duly executed by the parties.

*twelve 11-14*

8. The Settlement Agreement is effective as of October 6, 1997, except as to those mounts identified as directly relating to the U.S. Marine Corps for which the effective date is November 18, 1997.

Dustin F. Hecker, Esq.
Posternak, Blankstein & Lund
100 Charles River Plaza
Boston, MA 02114-2723
(617) 973-6100
*as atty for defendants only, and not individually*

John P. McGonagle, BBO #333760
800 Hingham Street - 2N
Rockland, MA 02370
(617) 227-7755

James A. Weisman, BBO #520960
Weisman & Toland, P.A.
44 Bromfield St., Penthouse
Boston, MA 02108
(617) 451-1214

Thomas Patterson, Individually
& for G.G.& G., L.L.C.

Richard B. Swan, Individually
& for A.R.M.S., Inc.

Thomas Newhall, Individually
& for G.G.& G., L.L.C.

Mark Newhall, Individually

DEC 01 '97 12:55 TO-MCGONAGLE FROM- T-302 P.01-01 F-197

TO 16173672315111 P.03

DEC-01-1997 07:16 FROM G.G. & G

NOV-20-97 FRI 12:06 LAW OFF J MCGONAGLE P.02

6. In Section D of the Agreement, it is understood that Gerald Goddard & Associates ("Goddard") is solely the agent of Plaintiffs and is not in the manner of an "arbiter," mutually authorized by the parties to make decisions that are mutually binding on them. Defendants agree that they will cooperate and not interfere with Gerald Goddard & Associates in the performance of Goddard's duties under this Agreement. Defendants and Mark Newhall will make their best efforts to turn over or make available to Goddard all materials to be returned to Plaintiffs by December 15, 1997.

7. This Addendum and the Agreement supersede any and all deal or written agreements and understandings previously made between the parties relating to the subject matter hereof. There are no understandings or agreements other than those incorporated or referred to herein. The Agreement and this Addendum may not be modified except by an instrument in writing duly executed by the parties.

8. The Settlement Agreement is effective as of October 6, 1997, except as to those [twelve 11-14] amounts identified as directly relating to the U.S. Marine Corps for which the effective date is November 18, 1997.

Dustin F. Hecker, Esq.
Posternak, Blankstein & Lund
100 Charles River Plaza
Boston, MA 02114-2723
(617) 973-6100
as atty for Defendants not individually only [illegible]

John P. McGonagle, BBO #333776
800 Hingham Street - 2N
Rockland, MA 02370
(617) 227-7755

James A. Weisman, BBO #520960
Weisman & Toland, P.A.
41 Bromfield St., Penthouse
Boston, MA 02108
(617) 451-1214

Thomas Patterson, Individually & for G.G. & G., L.L.C.

Richard F. Swan, Individually & for A.R.M.S., Inc.

Thomas Newhall, Individually & for G.G. & G., L.L.C.

Mark Newhall, Individually

# ADDENDUM

By their signatures below, appended this 26th day of November, 1997, the undersigned indicate that the blank appearing in Section B.4. of the Settlement Agreement in U.S. District Court (Massachusetts) Cause No. 96-11425WGY is to be filled in as follows:

> all documents produced by Defendants in U.S. District Court (Massachusetts) Cause No. 96-11425WGY, with the exception that raw data produced by Defendants on computer discs supersedes and replaces the computer-generated compilations of data that Defendants had earlier produced.

Thomas Patterson, Individually & for
G.G.& G., L.L.C.

Thomas Newhall, Individually & for
G.G.& G., L.L.C.

**EXHIBIT 3**

**(Stipulation and Motion For Entry of Judgment)**

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

ATLANTIC RESEARCH MARKETING SYSTEMS, INC., a/k/a A.R.M.S., and RICHARD E. SWAN,
Plaintiffs

v.

G.G.& G., L.L.C., a/k/a GUNS, GEAR & GADGETS, L.L.C. or G', L.L.C., THOMAS PATTERSON, THOMAS NEWHALL, MARK NEWHALL and GRACE TOOL, INC.,
Defendants

C.A. No. 96-11425WGY

DOCKETED

YOUNG D.J.
MOTION ALLOWED
William G. Young
U.S. District Judge
Dec. 17, 1997

STIPULATION AND MOTION FOR ENTRY OF JUDGMENT

Plaintiffs, A.R.M.S., and Richard E. Swan, and Defendants, G.G.& G., L.L.C., Thomas Patterson, and Thomas Newhall, and Mark Newhall, stipulate and request that this Court enter a Judgment in this action in the form attached. In support of this motion, they state that they have entered into a settlement agreement and addenda to resolve this action and entry of the attached Judgment is a critical element of their settlement.

The parties also request that the enclosed Settlement Agreement and Addenda be filed with the Court, under seal.



DOCKETED

20

**EXHIBIT 4**

**(M-14 Mount Illustration)**




# A.R.M.S. ™ Item #18

M21/14 MOUNT FOUNDATION

MATERIAL STEEL

NSN

CHARRETTE

**EXHIBIT 5**

**(John H. Miller Affidavit)**

CWO. JOHN M. MILLER
RT#3 BOX 434 WINTERS DR.
MARIETTA, OHIO 45750

AFFIDAVIT OF JOHN M. MILLER

I, JOHN M. MILLER, BEING DULY SWORN, DEPOSES AND STATES AS FOLLOWS:

1. I, JOHN M. MILLER, OF RT #3 BOX 434 WINTERS DRIVE, MARIETTA, OHIO 45750, HAVING BEEN EMPLOYED BY THE STATE OF OHIO ADJUTANTS GENERAL DEPARTMENT AS A MATCH WEAPONS ARMORER AND GUNSMITH, SINCE 1972 TO PRESENT, TRAINED AT ABERDEEN PROVING GROUND AS A U.S. ARMY SMALL ARMS REPAIRMAN IN 1964, HAVING SPENT THREE YEARS IN THE REGULAR ARMY, 22 MONTHS IN THE REPUBLIC OF VIET-NAM AS A SMALL ARMS REPAIRMAN, AND HAVING BEEN TEAM CAPTAIN OF THE OHIO NATIONAL GUARD HIGH POWER RIFLE TEAM, USING THE M14 RIFLE IN MATCHES, AND HAVING CO-AUTHORED A PUBLISHED BOOK WITH MR. SCOTT DUFF ON THE M14 RIFLE (THE M14 OWNER'S GUIDE AND MATCH CONDITIONING INSTRUCTIONS, 1996). I FEEL QUALIFIED TO SPEAK ON MATTERS PERTAINING TO THE M14 RIFLE.

2. THIS AFFIDAVIT IS BASED ON PERSONAL KNOWLEDGE.

3. ON OR ABOUT SEPTEMBER 17, 1999, I PURCHASED TWO M14 TELESCOPE MOUNTING DEVICES FROM A DEALER, FLAG GUNS, 1281 E. LA HABRA BLVD., LA HABRA, CALIFORNIA 90631
   EACH OF THESE M14 RIFLE MOUNTS HAD THE FOLLOWING STAMPED ON THEM "GGG TUC AZ U.S.M.C.". THE DEALER INDICATED TO ME THAT THE TWO MOUNTS WERE OBTAINED FROM G.G.&G., INC. TUCSON, ARIZONA.

4. SUBSEQUENT TO THIS PURCHASE, I ATTENDED THE SOLDIER OF FORTUNE SHOW IN LAS VEGAS, NEVADA, DURING THE PERIOD 9/25-9/26 1999. THE SOLDIER OF FORTUNE SHOW IS A LARGE MILITARY ORIENTED TRADE SHOW, VETERANS REUNION AND "THREE GUN" MATCH COMPETITION, HELD YEARLY BY THE OWNER OF THE SOLDIER OF FORTUNE MAGAZINE COL. ROBERT K. BROWN USA (RET)

5. WHILE WALKING THROUGH THE SHOW, I SAW AND OBSERVED THOMAS NEWHALL AND THOMAS PATTERSON OF G.G.&G. INC. SELLING M14 RIFLE TELESCOPE MOUNTING DEVICES AS "PRODUCTION OVERRUNS". BOTH THOMAS NEWHALL AND THOMAS PATTERSON WERE KNOWN TO ME PRIOR TO THIS SHOW.

6. THE M14 RIFLE TELESCOPE MOUNTING DEVICES (MOUNTS) WHICH I OBSERVED THOMAS NEWHALL AND THOMAS PATTERSON SELLING WERE THE IDENTICAL PATTERN TO THE M14 RIFLE TELESCOPE MOUNTS PICTURED IN ATTACHMENT "A" TO THIS AFFIDAVIT.

SWORN TO UNDER THE PAINS AND PENALTIES OF PERJURY THIS 14 th DAY OF JANUARY, 2000.

John M. Miller
JOHN M. MILLER

STATE OF OHIO )
)
COUNTY OF WASHINGTON )

SUBSCRIBED AND SWORN TO ME THIS 14 th DAY OF JANUARY 2000

Regena B Wigal
NOTARY PUBLIC
MY COMMISSION EXPIRES: 7/10/04

REGINA B. WIGAL
Notary Public, State of Ohio
My Commission Expires July 10, 2004

Attachment "A"




# A.R.M.S. ™ Item #18

M21/14 MOUNT FOUNDATION

| MATERIAL | NSN |
|---|---|
| STEEL | |

CHARRETTE

**EXHIBIT 6**

**(Rocky A. Green Affidavit)**

AFFIDAVIT OF ROCKY A. GREEN

I Rocky A. Green, being duly sworn, deposes and states as follows:

1. I live in Lake Forest, California where I am a manufacturers representative, specializing in equipment for law enforcement agencies. I have been in the firearms business since 1982. I owned a distributorship specializing in high quality and professional end user telescopic sights and mounting systems. I designed (with input from others) one of the mounts the U. S. Marine Corps used on their M14 rifles for the FAST teams operating out of the east coast.

2. This affidavit is based upon personal knowledge.

3. During the period 9/25/99, I attended the Soldier of Fortune Show in Las Vegas, Nevada. This show is a cross between a trade show and a gun show. I go there to see some of the newer things that are being shown to the public.

4. While walking through the show with Ludovic De La Fortrie we saw and then visited the G.G. & G booth, specifically visiting Hans Vang who was in attendance at the booth. At this booth Thomas A. Patterson and Tom Newhall of G.G.&G., Inc. were also in attendance. I have known both men for several years.

5. During my conversation with Hans Vang and Tom Newhall I observed an M-14 mount sitting out on a table at the booth. During the conversation Tom Newhall stated that the particular M-14 mount on the table was from an overrun from a batch of M-14 mounts which G.G.&G. was making and selling under contract to the U.S. Marine Corps.

6. The M-14 mount which I observed was substantially identical to the M-14 mount pictured in Attachment A to this Affidavit.

Sworn to under the pains and penalties of perjury this 21st day of March, 2000.

[signature]
Rocky A. Green

State of California )
) ss.
County of __Orange_)

Subscribed and sworn to before me this 21st day of March, 2000.

GIAHOA PHAM
Commission # 11[illegible]
Notary Public - California
Orange County
My Comm. Expires Jun 5, 2002

[signature]
Notary Public

My commission expires:

ATTACHMENT "A"




**A.R.M.S. ™ Item #18**

M21/14 MOUNT FOUNDATION

| MATERIAL | NSN |
|---|---|
| STEEL | |

CHARRETTE

**EXHIBIT 7**

**(Patterson Deposition Excerpt)**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

THOMAS J. PATTERSON,
Plaintiff,
vs.
ATLANTIC RESEARCH MARKETING SYSTEMS, INC. a.k.a. A.R.M.S., a Massachusetts Corporation; RICHARD and JANE DOE SWAN, husband and wife,
Defendants.

No. CV 98368

DEPOSITION OF THOMAS J. PATTERSON
December 23, 1999
Tucson, Arizona

MEYER, LUMIA & ASSOCIATES
100 North Stone Avenue, Suite 802
Tucson, Arizona 85701
(520) 623-1100 Fax 520-623-2067



APPEARANCES:
LAW OFFICES OF TERRY P. ESSER
By HOWARD R. WINE, Attorney at Law
200 West Magee, Suite 150
Tucson, Arizona 85704
Attorneys for Plaintiff

MESCH, CLARK & ROTHSCHILD, P.C.
By ALAN ARIAV, Attorney at Law
259 North Meyer Avenue
Tucson, Arizona 85701
Attorneys for Defendants

* * * *

BE IT REMEMBERED that pursuant to notice, the deposition of THOMAS J. PATTERSON was taken in the law offices of Mesch, Clark & Rothschild, 259 North Meyer Avenue in the City of Tucson, County of Pima, State of Arizona, before Diane Laur, a Notary Public in and for the County of Pima, State of Arizona, on the 23rd day of December, 1999, commencing at the hour of 10:30 a.m. on said day, on behalf of the Defendants.

* * * *

*** Notes ***



I N D E X


| WITNESS: | PAGE: |
|---|---|
| THOMAS J. PATTERSON | |
| EXAMINATION BY MR. ARIAV: | 4 |
| EXAMINATION BY MR. WINE | 153 |
| RE-EXAMINATION BY MR. ARIAV | 156 |

| EXHIBITS: | PAGE: |
|---|---|
| 1 | 93 |
| 2 | 98 |
| 3 | 100 |
| 4 | 102 |
| 5 | 105 |
| 6 | 108 |
| 7 | 110 |
| 8 | 121 |
| 9 | 124 |
| 10 | 126 |
| 11 | 148 |




THOMAS J. PATTERSON,

having been first duly sworn, was examined and testified on his oath as follows:

EXAMINATION

BY MR. ARIAV:

Q Would you state your full name?
A Thomas Joseph Patterson.
Q What is your home address, Mr. Patterson?
A 1170 North Corinthian Place, Tucson, Arizona 85715.
Q Your home telephone number?
A 520-721-0272.
Q Your business address and business phone number?
A 3602 East 42nd Stravenue 85713 in Tucson.
Q And the telephone number there?
A 520-748-7167.
Q And what is the name of the business?
A GG&G.
Q Is that a corporation?
A It's an LLC.

*** Notes ***

He gave his presentation to the judge. The judge said that his first comment was that this settlement agreement states the GG&G IRS products. The first thing he noticed was that the GG&G new products don't say IRS. So from that standpoint there did not seem to be any violation.

Judge Young ruled that the IRS did not violate the settlement agreement. That was Mr. McGonagle's best shot.

Judge Young then issued a ruling stating that we did not violate the settlement agreement and that all matters concerning interpretation of the settlement agreement, GG&G's interpretation would hold. He declined summary judgment for ARMS and issued a summary judgment for GG&G.

Q Did he assign attorney's costs?
A No.
Q Have you asked for them?
A No.
Q Other than the defamation action and the counterclaim, have you resolved your litigation with ARMS concerning the Boston litigation or any other litigation you have?
A Our opinion is it's over with. Mr.



Swan continues when he distributes the press release, which he still distributes today, to tell people we're in violation of the settlement agreement, we're illegally violating his patent agreement and we're going to jail.
Q When you say it is over, you're referring to the Massachusetts litigation?
A Yes. All you have to do is read Judge Young's ruling.
Q Other than the ongoing litigation here in Tucson, are you involved in any other legal matters with Mr. Swan and his company?
A No.
Q It's your understanding that the Boston case is resolved, it's over?
A Correct.
Q After the settlement agreement in Boston was executed, did GG&G sell any products to the United States Marine Corps?
A Yes.
Q What products?
A Scope rings, specialty scope rings, specialty scope bases designed by the U. S. Marine Corps.
Q Did you sell any M-14 mounts to the

*** Notes ***



U.S. Marine Corps?
A We sold specially designed M-14 mounts by the Marine Corps.
Q Did you sell as many as 253 of those?
A Yes.
Q Is it your opinion that selling those mounts to the Marine Corps complies with the terms of the settlement agreement?
A Absolutely.
Q Do you know if Mr. Swan feels otherwise?
A I have no idea how Mr. Swan feels, other than all his comments to others that I'm getting secondhand.
Q Has Mr. Swan made an issue of those M-14 mounts? Has he made an issue of that in the court case in Boston?
A No. We've not received any formal or informal notification, by Mr. Swan's legal representatives, his company or the court, that he has any belief that we, in any way, violate the settlement agreement. There has been no correspondence.
MR. WINE: Can I break up this for just a second? It's up to you, if you want to



shorten this up. I'll go ahead and object to this fishing around about the Massachusetts case, but I don't have any objection to you listening and answering all these questions, but they're not relevant.
MR. ARIAV: Let's see how far it goes.
BY MR. ARIAV:
Q I've got some exhibits I'm going to show you. It's your testimony that the manufacture and selling the M-14 to the Marine Corps does not violate the settlement agreement; correct?
A Correct.
Q We can move this along if you'll just keep your answers to the point and I'll try to move this faster.
A Regardless of the misimpression that it might --
Q Go ahead. Go ahead, if you want to say something else about the M-14.
A Yes. The settlement agreement specifically focused on the products that were present on GG&G's manufacturing line at that time. The product sold to the Marines was not. It was a completely new design.

*** Notes ***